UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD LEE MANSFIELD, | No. 2:20-cv-1540 DB |
| Plaintiff, | |
| v. | ORDER |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2] Plaintiff's motion asserts several arguments including that the Administrative Law Judge erred at step two of the sequential evaluation, as well as with respect to the development of the record, treatment of the medical opinion evidence, and treatment of lay witness testimony.

////

---

[1] After the filing of this action Kilolo Kijakazi was appointed Acting Commissioner of Social Security and has, therefore, been substituted as the defendant. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c). (See ECF No. 9.)

1

For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings.

## PROCEDURAL BACKGROUND

On August 4, 2016, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on February 28, 2015. (Transcript ("Tr.") at 16, 280-94.) Plaintiff's alleged impairments included schizophrenia, bipolar disorder, post-traumatic stress disorder, high blood pressure, and head pain. (Id. at 321.) Plaintiff's applications were denied initially, (id. at 171-76), and upon reconsideration. (Id. at 178-84.)

Plaintiff requested an administrative hearing and which was held before an Administrative Law Judge ("ALJ") on November 7, 2019. (Id. at 37-94.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 37-43.) In a decision issued on January 10, 2020, the ALJ found that plaintiff was disabled beginning on March 2, 2019. (Id. at 30.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
>
> 3. Since the alleged onset date of disability, February 28, 2015, the claimant has had the following severe impairments: history of coronary artery disease status post myocardial infarction with stent placement; hypertension; headaches; bipolar disorder; post-traumatic stress disorder ("PTSD"); and depressive disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. Since February 28, 2015. the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, I find that since February 28, 2015, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and

2

416.967(b) except with the following limitations: simple, routine tasks in a setting with few workplace changes; no work at a fixed quota rate; no more than occasional interaction with the general public, coworkers, and supervisors.

6. Since February 28, 2015, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. Prior to the established disability onset date, the claimant was an individual closely approaching advanced age. On March 2, 2019, the claimant's age category changed to an individual of advanced age. (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Prior to March 2, 2019, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on March 2, 2019, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Prior to March 2, 2019, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. Beginning on March 2, 2019, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

12. The claimant was not disabled prior to March 2, 2019, but became disabled on that date and has continued to be disabled through the date of this decision. His disability is expected to last twelve months past the onset date (20 CFR 404.1520(g) and 416.920(g)).

13. The claimant's substance use disorder is not a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935).

(Id. at 19-29.)

On June 16, 2020, the Appeals Council denied plaintiff's request for review of the ALJ's January 10, 2020 decision. (Id. at 1-5.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on August 1, 2020. (ECF. No. 1.)

3

**LEGAL STANDARD**

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

////

4

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff's pending motion asserts nine identified errors. (Pl.'s Reply (ECF No. 27) at 5.[3]) While that is an unusually high number of asserted errors, review of the ALJ's decision finds that it is, in fact, replete with errors. For purposes of judicial efficiency and clarity, the Court will address just some of the more egregious harmful errors identified by plaintiff.

**I.    Step Two Error**

Plaintiff argues that the ALJ erred at step two of the sequential evaluation by failing to find that plaintiff's cognitive and intellectual impairments were severe. (Pl.'s MSJ (ECF No. 16) at 25-27.) At step two of the sequential evaluation, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments. Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41). The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, and carrying; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

The Supreme Court has recognized that the Commissioner's "severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be

---

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

5

disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S. at 153. However, the regulation must not be used to prematurely disqualify a claimant. Id. at 158 (O'Connor, J., concurring). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." Smolen, 80 F.3d at 1290 (internal quotation marks and citation omitted).

"[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28); see also Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005) (claimant failed to satisfy step two burden where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results"). "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'" Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at 1290); see also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) (discussing this "de minimis standard"); Tomasek v. Astrue, No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal. Feb.11, 2008) (describing claimant's burden at step two as "low").

Here, plaintiff's medical history includes diagnosed schizophrenia, for which he was admitted "to a psychiatric unit" and treated with Aristada.[4] (Tr. at 683, 960.) Plaintiff was also diagnosed as suffering from Generalized Anxiety Disorder and treated with Hydroxyzine.[5] (Id. at 453-54, 538.) The ALJ did not address these impairments at step two.

Additionally, plaintiff was diagnosed as suffering from hearing loss. In a vague and conclusory assertion, the ALJ stated that as to several impairments including hearing loss, "the record does not reflect that the above-identified physical impairments would more than minimally

////

---

[4] Aristada "treats schizophrenia[.]" Otsuka Pharmaceutical Co., Ltd. v. Burwell, 302 F.Supp.3d 375, 381 (D. D.C. 2016).

[5] Hydroxyzine is used in the treatment of anxiety. See Tate v. Kijakazi, Civil No. 2:20-cv-2096 PKH MEF, 2021 WL 3645537, at *6 n.8 (W.D. Ark. July 28, 2021)

limit the claimant's ability to perform basic work activities for a continuous period of 12 or more months." (Tr. at 19.) How or why the ALJ arrived at that conclusion is entirely omitted.

Moreover, plaintiff underwent an Audiologic Evaluation which found "[b]ilateral high frequency hearing loss," 80% word recognition loss in the right ear, and 60% word recognition loss in the left ear. (Id. at 886.) That is consistent with agency staff observations that plaintiff "had to lean forward and turn his head in one direction because of an apparent hearing problem." (Id. at 318.)

As noted above, the ALJ's conclusion that the claimant lacks a medically severe impairment or combination of impairments is valid only when that conclusion is "clearly established by medical evidence." Webb, 433 F.3d at 687. On this record, the court cannot say that it was clearly established by the medical evidence that these impairments were not severe impairments during the period at issue. See Ortiz v. Commissioner of Social Sec., 425 Fed. Appx. 653, 655 (9th Cir. 2011) ("This is not the total absence of objective evidence of severe medical impairment that would permit us to affirm a finding of no disability at step two."); Webb, 433 F.3d at 687 ("Although the medical record paints an incomplete picture of Webb's overall health during the relevant period, it includes evidence of problems sufficient to pass the de minimis threshold of step two."); Russell v. Colvin, 9 F.Supp.3d 1168, 1186-87 (D. Or. 2014) ("On review, the court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Ms. Russell did not have a medically severe impairment or combination of impairments."); cf. Ukolov, 420 F.3d at 1006 ("Because none of the medical opinions included a finding of impairment, a diagnosis, or objective test results, Ukolov failed to meet his burden of establishing disability.").

Nor can the court find the ALJ's errors harmless. An error is harmless only if it is "inconsequential" to the ALJ's "ultimate nondisability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006); see also Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (error harmless if "there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion."). An ALJ's failure to consider an impairment "severe" at step two is harmless if the ALJ considers all

1   impairments—regardless of severity—in the subsequent steps of the sequential analysis. See
2   Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (finding step two error harmless as the ALJ
3   specifically discussed plaintiff's bursitis and its effects when identifying the basis for limitations
4   in plaintiff's RFC). Here, the ALJ did not consider these impairments in the subsequent steps of
5   the sequential evaluation.

Accordingly, the court finds that plaintiff is entitled to summary judgment on the claim that the ALJ erred at step two of the sequential evaluation.

## II.   Bulk Citations

Plaintiff argues that the ALJ impermissibly relied on "bulk sections of the record" to support the opinion. (Pl.'s MSJ (ECF No. 16) at 21.) While an ALJ is not required to explain a decision with "ideal clarity . . . we still demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review. A clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations and quotations omitted); see also Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) ("Our decisions make clear that we may not take a general finding . . . and comb the administrative record to find specific conflicts.").

Here, the ALJ repeatedly attempted to support conclusions by general citations to voluminous records absent any specificity. For example, the ALJ asserted that plaintiff's "[s]ubsequent cardio examinations were generally noted to be unremarkable," and that the record did "not reflect that the claimant required more intensive treatment for his cardiac impairments[.]" (Tr. at 22.) In support of this finding the ALJ cited to "Exhibits 11F, 13F, 14F, 16F, and 22F.) Exhibit 11F alone is 105 pages. (Id. at 582-686.)

The ALJ also asserted that plaintiff "repeatedly noted that his psychotropic medications helped to manage his symptoms and the treatment records also reflect improvement through overall improved metal status findings." (Id. at 23.) In support of this assertions that ALJ cited to "Exhibits 12F27-40, 16F/1, 17F and 21F." (Id.) Exhibit 17F consists of 42 pages and Exhibit 21F consists of 68 pages. (Id. at 841-882, 895-962.)

"This court is neither required nor inclined to scour the record in an attempt to divine the specific basis for an ALJ's opinion." Romo v. Colvin, 83 F.Supp.3d 1116, 1121 n.4 (D. Colo. 2015); see also U.S. v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); Morgan v. Colvin, 68 F.Supp.3d 1351, 1358 n.6 (D. Colo. 2014) ("I continue to criticize the Commissioner for what appears to be a trend of relying on sweeping, non-specific citations to the record in support of her decision.").

Accordingly, the Court finds that plaintiff is entitled to summary judgment on this claim.

## III. Incomplete Record

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983); see also Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992) ("the ALJ is not a mere umpire at such a proceeding, but has an independent duty to fully develop the record").

Here, it is undisputed that every other page of a June 30, 2015, Ascent Behavior Services recommendation and referral summary are missing from the administrative record. Defendant argues this "document is a simple intake form[.]" (Def.'s MSJ (ECF No. 25) at 18.) Review of the document finds that defendant's characterization is inapposite.

From the pages provided in the record, it appears that the complete document would actually be quite detailed and relevant. In this regard, according to the document the complete version would include:

> . . . a narrative summary of the evaluation procedures, a five-axis diagnostic summary of [plaintiff's] problems, a detailed substance use diagnosis and treatment history, an assessment of placement and service needs, the staff's recommendations for specific services within each area and an overall level of care or program placement to best address them.

(Tr. at 526.)

Accordingly, the Court finds that plaintiff is also entitled to summary judgment on this claim. See Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) ("the ALJ had an affirmative duty to supplement Webb's medical record, to the extent it was incomplete").

////

**IV.     Plaintiff's Testimony**

The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792

////

(9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ recounted plaintiff's testimony before finding that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not fully supported."[6] (Id. at Tr. at 22-23.)

The ALJ then attempted to support this vague and conclusory assertion by reliance on plaintiff's "described daily activities," which the ALJ asserted were "not limited to the extent one would expect, given the complaints of disability symptoms and limitations." (Id. at 23.) The activities that the ALJ found not sufficiently limited included, "the ability to live alone in a shelter," "read," "watch television," "attend to . . . basic hygiene needs without assistance," etc. (Id.)

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ... and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012). In this regard, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); see also Garrison v.

---

[6] "ALJs routinely include this statement in their written findings as an introduction to the ALJ's credibility determination" before "identify[ing] what parts of the claimant's testimony were not credible and why." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014). "The use of this generic language is not itself reversible error . . . but it inverts the responsibility of an ALJ, which is first to determine the medical impairments of a claimant based on the record and the claimant's credible symptom testimony and only then to determine the claimant's RFC. By rejecting a claimant's subjective symptoms 'to the extent they are inconsistent with the above residual functional capacity assessment,' the agency indicates that it is failing properly to incorporate a claimant's testimony regarding subjective symptoms and pain into the RFC finding, as it is required to do." Trevizo, 871 F.3d at 679 n.6.

11

Colvin, 759 F.3d 995, 1016 (9th Cir. 2014) (citation omitted) ("[I]mpairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."); Smith v. Califano, 637 F.2d 968, 971 (3rd Cir. 1981) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.").

The ALJ also asserted that the record established that plaintiff's "conservative treatment was overall effective in managing' the claimant's mental health symptoms." (Tr. at 23.) Why "psychotropic medications" should be considered conservative treatment is not, however, addressed by the ALJ. (Id.) "Courts have established that medication treatment regimens with such medications are not conservative." Gary I. v. Kijakazi, Case No. 2:20-cv-7882 GJS, 2022 WL 220918, at *5 (C.D. Cal. Jan. 24, 2022).

For the reasons stated above, the Court finds that the ALJ failed to offer a clear and convincing reason for rejecting plaintiff's testimony. Accordingly, plaintiff is also entitled to summary judgment on this claim.

## CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide

benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, although the ALJ's errors are particularly numerous, because of the quantity of errors the Court cannot find that further proceedings would serve no useful purpose.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is granted;
2. Defendant's cross-motion for summary judgment (ECF No. 25) is denied;
3. The Commissioner's decision is reversed; and
4. This matter is remanded for further proceedings consistent with this order.

Dated:  September 1, 2022

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\mansfield1540.ord